[Cite as *Olenchick v. Scramling*, 2020-Ohio-4110.]

**IN THE COURT OF APPEALS**

**ELEVENTH APPELLATE DISTRICT**

**LAKE COUNTY, OHIO**

| | | |
|---|---|---|
| RODNEY P. OLENCHICK, et al., | : | **O P I N I O N** |
| Plaintiffs-Appellants, | : | |
| - vs - | : | **CASE NO. 2020-L-014** |
| JOHN SCRAMLING, et al., | : | |
| Defendants-Appellees. | : | |

Civil Appeal from the Lake County Court of Common Pleas, Case No. 2018 CV 000553.

Judgment: Affirmed.

*Marc L. Stolarsky*, Marc L. Stolarsky Law, LLC, P.O. Box 24221, Cleveland, OH 44124 (For Plaintiffs-Appellants).

*Thomas J. Connick*, Connick Law, LLC, 25550 Chagrin Boulevard, Suite 101, Cleveland, OH 44122 (For Defendant-Appellee John Scramling).

*Timothy T. Reid*, Mansour Gavin LPA, North Point Tower, 1001 Lakeside Avenue, Suite 1400, Cleveland, OH 44114 (For Defendant-Appellee Lake County Recorder).

*Brian T. Winchester* and *Chad A. Schmitt*, McNeal Schick Archibald & Biro Co., LPA, 4608 St. Clair Avenue, Cleveland, OH 44103 (For Defendant-Appellee Ohio Real Title Agency, LLC).

TIMOTHY P. CANNON, P.J.

{¶1} This case involves a dispute over the ownership of a garage unit at Bayridge Condominiums ("Bayridge") located in Willowick, Lake County, Ohio. Two appeals were taken from the trial court's final order in the matter. The instant appeal

was brought by plaintiffs-appellants, Rodney P. Olenchick and Randy (*né* Ranold) D. Olenchick, against defendants-appellees—John Scramling, the Lake County Recorder, and Ohio Real Title Agency, LLC. The judgment is affirmed.

{¶2} In 1978, Randy D. Olenchick ("Randy") purchased a condominium and garage at Bayridge. The deed for this transaction indicates Randy purchased Condominium Unit No. 30 and Garage Unit No. 41.

{¶3} In 1980, his brother Rodney P. Olenchick ("Rodney") purchased Garage Unit No. 60 from Mary Manning, a condominium owner at Bayridge. In 1981, Randy received Garage Unit No. 59 in exchange for conveying Garage Unit No. 41 to Mary Manning. In 1982, Mary Manning sold her condominium unit and Garage Unit No. 41 to a third party. These transactions were all recorded. Neither Mary Manning nor her grantee are parties to this dispute.

{¶4} In 1989, Rodney transferred title of Garage Unit No. 60 to Randy by quit claim deed. A copy of the recorded deed was introduced by defense counsel during depositions, but neither brother recalled the transaction. It was also alleged by the Olenchicks, however, that Rodney subsequently purchased rights to Garage Unit Nos. 59 and 60 from Randy. No documentation was produced evidencing this transaction. Rodney testified that documentation might have existed at one point but could not be located; Randy testified it was an oral agreement. The issue of which brother owned legal title for either or both units was a source of confusion throughout the litigation.[1] It is undisputed, however, that regardless of which Olenchick held legal title, Garage Unit

---

1. This confusion was seemingly caused by a combination of poor drafting and the Olenchicks' lack of understanding of legal terminology. Prior to the transaction between Randy and Scramling, one of the brothers held legal title to each of the two garage units, and Rodney undisputedly possessed the right to use both garage units.

2

Nos. 59 and 60 were used exclusively by Rodney pursuant to an oral agreement between the two brothers. Rodney does not own, and has never owned, a condominium unit at Bayridge.

{¶5} On February 16, 2016, Randy sold his Bayridge condominium to John Scramling ("Scramling"). The first page of the Purchase Agreement describes the property as a "1bdrm condominium, no garage space." However, the General Warranty Deed purportedly conveyed to Scramling both Condominium Unit No. 30 and Garage Unit No. 41. The deed was drafted by an attorney who is not a party to this action. The deed was admittedly signed by Randy and his spouse and was recorded on March 4, 2016.

{¶6} Subsequently, someone changed the deed by replacing "41" with "59" and adding a note that states, "deed rerecorded to show correct garage unit." The changes were handwritten on the original deed and were not initialed. The original time stamp of the Lake County Recorder was crossed out. A new stamp from the Deputy County Auditor on August 3, 2017, indicated a second transfer was not necessary. The deed was then rerecorded by the Lake County Recorder on or about August 3, 2017, and purportedly conveyed Condominium Unit No. 30 and Garage Unit No. 59 from Randy to Scramling.

{¶7} The specifics are not unveiled in the record, but this conflict subsequently ensued because Scramling asserted ownership of Garage Unit No. 59, and Rodney refused to vacate.

{¶8} On April 4, 2018, the Olenchick brothers filed a complaint against Scramling, the Lake County Recorder ("the Recorder"), Ohio Real Title Agency, LLC

3

("Real Title"), and Bayridge Condominium Owners Association, Inc. The trial court subsequently dismissed the Owners Association as a defendant upon granting its Civ.R. 12(B)(6) motion to dismiss.

{¶9} The Olenchicks requested the trial court issue an order to the Recorder and Real Title to correct the deed so that Garage Unit No. 59 is not in Scramling's name. The Olenchicks additionally requested reimbursement for attorney's fees, court costs, and "damages for this travesty taking his rights to garage number 59, ignoring his pleas to fix the error and refusal to correct it in a timely manner."

{¶10} The Recorder answered the complaint on May 29, 2018. Real Title answered the complaint on July 9, 2018, following the denial of its Civ.R. 12(B)(6) motion to dismiss.

{¶11} On June 8, 2018, Scramling filed an answer to the complaint and a nine-count counterclaim against the Olenchicks for quiet title, forcible entry and detainer, trespass, conversion, declaratory judgment and injunctive relief, specific performance, ejectment, rent, and unjust enrichment.

{¶12} The Olenchicks answered Scramling's counterclaim on June 20, 2018. Their Civ.R. 12(B)(6) motion to dismiss the counterclaim was denied.

{¶13} On December 3, 2018, prior to the taking of any depositions, the Recorder filed a motion for summary judgment. The Recorder asserted it was entitled to judgment as a matter of law because it did not change the deed, it had no duty to inspect or investigate the changed deed, and it properly recorded the changed deed. The motion was supported by an affidavit of Lake County Recorder Becky Lynch,

4

averring that no one at the Recorder's office made any changes to the deed and that the changed deed was submitted for rerecording by Real Title.

{¶14} In rebuttal, filed December 19, 2018, the Olenchicks argued that Recorder Lynch's affidavit could be wrong; the Recorder's office has a duty to reject documents it has reasonable cause to believe are false or fraudulent, citing R.C. 317.13; and the Recorder's office is culpable for recording a deed that was altered by a non-attorney.

{¶15} On December 11, 2018, the Olenchick brothers were deposed by counsel for the Recorder, Real Title, and Scramling. The parties never reached an agreement as to date and time for any of the defendants to be deposed, and the trial court denied motions to compel.

{¶16} On December 26, 2018, prior to the transcription of any depositions, the Olenchicks moved for summary judgment on Scramling's counterclaim. They argued that Scramling has no legal right to quiet title of Garage Unit No. 59 because no contract exists for the sale of a garage unit to Scramling. Because Scramling cannot prove ownership of Garage Unit No. 59, the Olenchicks asserted the rest of his allegations must fail.

{¶17} Transcripts of the Olenchick brothers' depositions were filed with the court on January 4, 2019.

{¶18} That day, Scramling filed a brief in opposition to the Olenchicks' motion for summary judgment and moved for summary judgment on his counterclaim. Scramling asserted that (1) Rodney has no ownership interest in Garage Unit No. 59 because there is no documentary evidence that he ever purchased it from Randy, and (2) Randy has no ownership interest because the rerecorded deed demonstrates that Scramling is

the legal owner. Scramling also asserted that Randy had not paid taxes or homeowner fees on Garage Unit No. 59 since he sold the condominium to Scramling. Further, Scramling contended the Olenchicks' argument that the Purchase Agreement stated "no garage space" is precluded under the doctrine of merger by deed. Finally, Scramling argued that the "deed restrictions and the condominium by-laws" require that a garage unit must be sold with a condominium unit. The document upon which Scramling relies is the "Declaration of Condominium Ownership for Bayridge Condominium." Scramling continuously argues these are deed restrictions. They are more accurately characterized as the recorded condominium bylaws, enforceable by the Owners Association.

{¶19} The Olenchicks filed their rebuttal to Scramling's motion on January 24, 2019. They asserted the doctrine of merger by deed does not preclude reformation of the deed, because the original deed contained a mistake that did not reflect the parties' agreement and the rerecorded deed was covertly altered after it was signed. Attached to their rebuttal was, inter alia, (1) the residential listing input sheet, which indicates "none" for the garage; (2) the property listing, which reads, "Garage Feat: None"; and (3) the Purchase Agreement, which describes the property as a "1bdrm condominium, no garage space."

{¶20} On February 1, 2019, Real Title moved for summary judgment on the Olenchicks' complaint, raising several arguments that rely on the merger by deed doctrine, the condominium bylaws, and Rodney's alleged lack of standing to sue. The Olenchicks filed a brief in opposition on February 20, 2019, arguing, inter alia, that

merger by deed does not apply to this matter, the rerecorded deed was fraudulent, and Real Title does not have standing to assert a legal claim as to the condominium bylaws.

{¶21} On May 16, 2019, the trial court issued an order ruling on the parties' competing motions for summary judgment. The trial court (1) granted the Recorder's motion and Real Title's motion, and dismissed them as parties to the action; (2) granted summary judgment in favor of the Olenchicks on their claim against Scramling; (3) denied Scramling's motion as to his counterclaim; (4) granted the Olenchicks' motion as to Scramling's claims for quiet title, forcible entry and detainer, trespass, conversion, declaratory judgment and injunctive relief, specific performance, ejectment, and rent; and (4) denied the Olenchicks' motion as to Scramling's claim for unjust enrichment, to the extent it sought damages for any payments Scramling made of condominium unit owners association fees and taxes attributable to Garage Unit Nos. 59 and 60. The trial court issued the following instructions:

> The parties are hereby ordered to take the steps necessary to reform the deed to reflect that no garage unit was transferred to Scramling. If the parties fail to take such action within 90 days, any party may file this entry with the Lake County Recorder and the Lake County Recorder and Lake County Auditor shall take the steps necessary to correct the ownership of Bayridge Condominium Garage Unit No. 59 to Randy Olenchick.

{¶22} Following summary judgment, the only issue that remained before the trial court was Scramling's claim for unjust enrichment. Scramling subsequently filed a motion for a nunc pro tunc order, requesting the trial court add Civ.R. 54(B) language that there is "no just reason for delay," so as to permit an immediate appeal of the interlocutory order. The Olenchicks opposed, and the trial court denied the motion.

7

Scramling then filed a motion to stay enforcement of the summary judgment order pending resolution of his counterclaim, which the trial court also denied.

{¶23} On June 3, 2019, the Olenchicks filed a motion for attorney's fees, pursuant to R.C. 2323.51, with a "demand that all Defendants be held jointly and severally liable for all of the Olenchicks' fees and costs." The motion was duly opposed by each defendant and summarily denied by the trial court on July 8, 2019.

{¶24} Finally, on January 13, 2020, an agreed judgment entry was issued by the trial court, cancelling the bench trial and dismissing with prejudice Scramling's unjust enrichment claim. The trial court incorporated by reference its summary judgment order, rendering it a final appealable order with "no just reason for delay."

{¶25} This appeal followed from the summary judgment order and also, with leave of this court, from the trial court's denial of the Olenchicks' motion for attorney's fees. The Olenchicks assert three assignments of error for our review:

> [1.] Pursuant to Ohio Civil Rule 56(C), the Trial Court committed prejudicial error in granting the Recorder's Motion for Summary Judgment based on the Court's determination that Rodney did not suffer any damages although it correctly accepted his property right by granting the Olenchicks' Motion for Summary Judgment and awarded Garage Unit No. 59 [to] them.
>
> [2.] Pursuant to Ohio Civil Rule 56(C), the Trial Court committed prejudicial error in granting ORTA's Motion for Summary Judgment based on their determination that Rodney did not have standing to sue although it correctly granted the Olenchicks' Motion for Summary Judgment and awarded Garage Unit No. 59 to them.
>
> [3.] The Trial Court committed prejudicial error in denying the Olenchicks' Complaint prayer for attorney fees and subsequent Motion for Attorney Fees against Scramling, ORTA and Recorder, pursuant to O.R.C. 2323.51, jointly and severally based on the claim that they all conspired together and acted with malice and frivolous conduct to cover up the falsifying of the deed property description listing of Garage Unit No. 59.

{¶26} The first two assignments of error challenge the trial court's decision to grant the Recorder's and Real Title's motions for summary judgment.

{¶27} An appellate court reviews a trial court's decision to grant summary judgment under a de novo standard of review, i.e., "independently and without deference to the trial court's determination." *Brown v. Cty. Commrs. of Scioto Cty.*, 87 Ohio App.3d 704, 711 (4th Dist.1993) (citation omitted); *see also Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105 (1996). Therefore, we apply the same test as the trial court in determining whether summary judgment is appropriate.

{¶28} "Civ.R. 56(C) specifically provides that before summary judgment may be granted, it must be determined that:

> (1) [n]o genuine issue as to any material fact remains to be litigated;
> (2) the moving party is entitled to judgment as a matter of law; and
> (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party.

*Temple v. Wean United, Inc.*, 50 Ohio St.2d 317, 327 (1977); *see also Murphy v. Reynoldsburg*, 65 Ohio St.3d 356, 359 (1992) ("Doubts must be resolved in favor of the non-moving party.").

{¶29} "Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Civ.R. 56(C).

9

{¶30} "[A] party seeking summary judgment, on the ground that the nonmoving party cannot prove its case, bears the initial burden of informing the trial court of the basis for the motion, and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact on the essential element(s) of the nonmoving party's claims." *Dresher v. Burt*, 75 Ohio St.3d 280, 293 (1996). "If the moving party fails to satisfy its initial burden, the motion for summary judgment must be denied." *Id.*

{¶31} If this initial burden is met, the nonmoving party then bears the reciprocal burden to set forth specific facts demonstrating a genuine issue for trial. *Id.*, citing Civ.R. 56(E). If the nonmovant fails to do so, summary judgment will be entered against the nonmoving party. *Id.*

{¶32} In their first assignment of error, the Olenchicks contend the trial court erred in granting summary judgment in favor of the Recorder because it accepted and recorded a fraudulent deed. They allege the deed was fraudulent because the parties had not agreed to the changes and because the Recorder does not have the power to make changes to documents after they are filed.

{¶33} The Recorder is an elected public official, whose duties are prescribed by statute. *See* Revised Code Chapter 317. Recorder. The Recorder has a mandated duty to record in the official records all deeds that are presented to the county recorder for that purpose. R.C. 317.13(A). The Recorder may refuse to record a deed presented for recording if (1) it is not required or authorized by the Revised Code; or (2) the Recorder has reasonable cause to believe the deed is materially false or fraudulent. R.C. 317.13(B). "*This division does not create a duty upon a recorder to inspect,*

10

*evaluate, or investigate an instrument of writing that is presented for recording.*" *Id.* (emphasis added).

{¶34} The Olenchicks provided no evidence that anyone in the Recorder's office made the changes to the deed. Further, there is no evidence that the Recorder violated any duty under R.C. 317.13 when it accepted and recorded the altered deed.

{¶35} The Olenchicks further contend the trial court erred in granting summary judgment to the Recorder by determining the Olenchicks had not suffered any damages. The trial court's holding as to damages, however, was with regard to Real Title's motion for summary judgment—not the Recorder's:

> Nonetheless, the court has determined that reformation of the deed is appropriate, and as the only evidence before the court is that Rodney had maintained uninterrupted possession and use of the garage unit, there is no such evidence that Rodney had suffered any monetary damages as a result of Real Title's alleged failure to assure clear title.

Accordingly, this argument is not well taken.

{¶36} As no genuine issues of material fact exist as to the Olenchicks' claim against the Recorder, the trial court did not err in granting the Recorder's motion for summary judgment.

{¶37} The Olenchicks' first assignment of error is without merit.

{¶38} In their second assignment of error, the Olenchicks contend the trial court erred in granting summary judgment in favor of Real Title based on a determination that Rodney did not have standing to sue.

{¶39} The trial court found that Real Title made a vague argument that Rodney lacked standing to sue based on the statute of frauds. Ohio's statute of frauds with respect to an interest in land provides: "No lease, estate, or interest, either of freehold

11

or term of years, or any uncertain interest of, in, or out of lands, tenements, or hereditaments, shall be assigned or granted except by deed, or note in writing, signed by the party assigning or granting it, or his agent thereunto lawfully authorized, by writing, or by act and operation of law." R.C. 1335.04.

{¶40} As to this argument, the trial court stated the following:

> The statute of frauds is not absolute and exceptions have been recognized in limited circumstances. "Equitable considerations such as partial performance and/or the doctrine of promissory estoppel may remove a transaction from the statute of frauds." *Hunter v. Green*, 5th Dist. Coshocton No. 12-CA-2, 2012-Ohio-5801, 2012WL6094172, ¶31.

> No writing has been provided to the court reflecting a transfer of Garage Unit No. 59 from Randy to Rodney. Rodney testified at his deposition that he believed documents exist demonstrating that he owned Garage Unit No. 59, but he had been unable to locate any such documents. *Deposition of Rodney Olenchick, p. 24-26*. Assuming that no writing exists, it is not clear that Rodney is precluded from asserting ownership as the court has determined that Scramling is not the owner, and the last documented owner, Randy, does not dispute Rodney's ownership, and the issue of ownership as between Rodney and Randy is not before the court. *See Blain's Folding Service, Inc. v. Cincinnati Ins. Co.*, 109 N.E.3d 177, 2018-Ohio-959 (8th Dist.).

> Rodney may lack standing to sue Real Title because he was not a party to the underlying agreement; however, neither party has briefed this issue.

> Nonetheless, the court has determined that reformation of the deed is appropriate, and as the only evidence before the court is that Rodney had maintained uninterrupted possession and use of the garage unit, there is no evidence that Rodney has suffered any monetary damages as a result of Real Title's alleged failure to assure clear title.

> Accordingly, Real Title's motion for summary judgment is well-taken and is hereby granted.

12

{¶41} It is clear, therefore, that the trial court did not grant summary judgment in favor of Real Title based on Rodney's alleged lack of standing to sue. Rather, the trial court's decision was based on the fact that, even if Real Title failed to assure clear title to Scramling, the Olenchicks had no evidence of resulting damages. Because the trial court had ordered reformation of the deed, there was no remedy to be had against Real Title. The Olenchicks' arguments against Real Title are not well taken.

{¶42} Because the premise of their argument is inaccurate, the Olenchicks' second assignment of error is without merit.

{¶43} In their third assignment of error, the Olenchicks challenge the trial court's denial of their motion for attorney's fees, brought pursuant to R.C. 2323.51.

> * * * [A]t any time not more than thirty days after the entry of final judgment in a civil action or appeal, any party adversely affected by frivolous conduct may file a motion for an award of court costs, reasonable attorney's fees, and other reasonable expenses incurred in connection with the civil action or appeal. The court may assess and make an award to any party to the civil action or appeal who was adversely affected by frivolous conduct, as provided in division (B)(4) of this section.

R.C. 2323.51(B)(1). "An award made pursuant to division (B)(1) of this section may be made against a party, the party's counsel of record, or both." R.C. 2323.51(B)(4).

{¶44} The Olenchicks contend defendants engaged in two types of "frivolous conduct," as defined below:

> (i) It obviously serves merely to harass or maliciously injure another party to the civil action or appeal or is for another improper purpose, including, but not limited to, causing unnecessary delay or a needless increase in the cost of litigation.

> (ii) It is not warranted under existing law, cannot be supported by a good faith argument for an extension, modification, or reversal of existing law, or cannot be supported by a good faith argument for the establishment of new law.

13

R.C. 2323.51(A)(2)(a).

{¶45} "'On appeal, [this court] will not reverse a lower court's decision on whether to award sanctions under R.C. 2323.51 absent a showing of an abuse of discretion.'" *State ex rel. DiFranco v. S. Euclid*, 144 Ohio St.3d 571, 2015-Ohio-4915, ¶13, quoting *State ex rel. Bell v. Madison Cty. Bd. of Commrs.*, 139 Ohio St.3d 106, 2014-Ohio-1564, ¶10, citing *State ex rel. Striker v. Cline*, 130 Ohio St.3d 214, 2011-Ohio-5350, ¶11. "To prove such an abuse, the appellant must establish that the [lower court's] award or denial of sanctions was unreasonable, arbitrary, or unconscionable." *Id.*; *accord In re Spagnola*, 195 Ohio App.3d 719, 2011-Ohio-5602, ¶16 (11th Dist.).

{¶46} "Frivolous conduct, as contemplated by R.C. 2323.51(A)(2)(a), is judged under an objective, rather than a subjective standard, and must involve egregious conduct. Frivolous conduct is not proved merely by winning a legal battle or by proving that a party's factual assertions were incorrect." *DiFranco, supra*, at ¶15 (internal citation omitted), citing *Ohio Power Co. v. Ogle*, 4th Dist. Hocking No. 12CA14, 2013-Ohio-1745, ¶29-30 ("'A party is not frivolous merely because a claim is not well-grounded in fact. * * * [R.C. 2323.51] was designed to chill egregious, overzealous, unjustifiable, and frivolous action. * * * [A] claim is frivolous if it is absolutely clear under the existing law that no reasonable lawyer could argue the claim.'"), quoting *Hickman v. Murray*, 2d Dist. Montgomery No. CA1-5030, 1996 WL 125916, *5 (Mar. 22, 1996).

{¶47} The Olenchicks contend the defendants and defense counsel engaged in frivolous conduct by acting maliciously at the depositions and by arguing their positions in bad faith, because they knew the deed had been altered. The Olenchicks further contend they were adversely affected by the frivolous conduct, "due to the fact that they

have to this date paid over $21,000 in costs and fees, spent countless hours in meetings * * *, missed work, have been under extreme stress and had to seek counseling to deal with emotional issues."

{¶48} As to the Recorder and Real Title, who were successful in their motions for summary judgment, the Olenchicks fail to allege conduct so egregious as to justify an award of attorney's fees. The same is true with regard to Scramling and his counsel. The deposition transcripts reflect behavior and responses typically observed in the adversarial setting.

{¶49} Further, Scramling's counterclaim and defenses were not objectively frivolous such that an award of attorney's fees was justified. Under existing law, any reasonable attorney would have, or could have, made the same arguments in response to the Olenchicks' complaint.

{¶50} Finally, the Olenchicks' accusation that all three defendants "conspired together and acted with malice and frivolous conduct to cover up the falsifying of the deed" has absolutely no evidentiary basis in the record.

{¶51} We conclude the trial court did not abuse its discretion in denying the Olenchicks' R.C. 2323.51 motion for attorney's fees.

{¶52} The Olenchicks' third assignment of error is without merit.

{¶53} At the conclusion of their brief, the Olenchicks contend the trial court failed in its duties in all of the following ways: (1) not assisting the parties with resolving the issues; (2) deciding the issues based only on the pleadings when there are credibility issues; (3) denying the Olenchicks' motions for mediation and to compel depositions; (4) not holding any hearings because of Scramling's last minute requests; (5) granting

defendants' every motion for leave; and (6) "delaying communicate [sic] to only the Olenchicks that the trial had been continued until after we had filed all trial documents." None of these contentions have been assigned as error on appeal, with reasons in support or citations to any authority, and we decline to address them. *See* App.R. 12(A)(2) and App.R. 16(A)(7).

{¶54} The judgment of the Lake County Court of Common Pleas, granting summary judgment in favor of the Lake County Recorder and Ohio Real Title Agency, LLC is affirmed. The judgment of the Lake County Court of Common Pleas, denying the Olenchicks' motion for attorney's fees is affirmed.


CYNTHIA WESTCOTT RICE, J.,

THOMAS R. WRIGHT, J.,

concur.

16